# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| JON MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>SP PLUS CORPORATION, MARC BAUMANN, ALICE PETERSON, GREGORY A. REID, WYMAN ROBERTS, DIANA L. SANDS, and DOUGLAS R. WAGGONER,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jon Moore ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against SP Plus Corporation ("SP Plus" or the "Company") and the members of SP Plus's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell SP Plus to Metropolis Technologies, Inc. ("Metropolis") (the "Proposed Transaction").

2. On October 4, 2023, SP Plus entered into an Agreement and Plan of Merger with Metropolis and Metropolis' wholly owned subsidiary Schwinger Merger Sub Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Metropolis will

acquire SP Plus, with SP Plus shareholders receiving $54.00 in cash for each SP Plus common share.

3.  On January 10, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that SP Plus stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (iii) potential conflicts of interest faced by Morgan Stanley and Company insiders; and (iv) the background of the Proposed Transaction.

4.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SP Plus stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.  The special meeting for SP Plus stockholders to vote on the Proposed Transaction is currently scheduled for February 9, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and SP Plus's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of SP Plus common stock.

10. Defendant SP Plus is a Delaware corporation, with its principal executive offices located at 200 E. Randolph Street, Suite 7700, Chicago, Illinois 60601. SP Plus's shares trade on the Nasdaq Global Select Market under the ticker symbol "SP."

11. Defendant Marc Baumann has been Chairman of the Board, Chief Executive Officer and a director of the Company at all relevant times.

12. Defendant Alice Peterson has been a director of the Company at all relevant times.

13. Defendant Gregory A. Reid has been a director of the Company at all relevant times.

14. Defendant Wyman Roberts has been a director of the Company at all relevant times.

15. Defendant Diana L. Sands has been a director of the Company at all relevant times.

16. Defendant Douglas R. Waggoner has been the Lead Independent Director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

18.     SP Plus provides mobility solutions, parking management, ground transportation, baggage, and other ancillary services in North America.  SP Plus provides on-site parking management, valet parking, ground transportation, facility maintenance, event logistics, remote airline check-in, security, municipal meter revenue collection and enforcement and consulting services, baggage services, wheelchair assist services, and on-street parking meter collection and other forms of parking enforcement services, among others.  The Company also provides multi-platform marketing services, including SP+, AeroParker, and KMP Digitata branded websites that offer clients a platform for marketing their facilities, mobile applications, search marketing, email marketing, and social media campaigns.

**The Proposed Transaction**

19.     On October 5, 2023, SP Plus announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LOS ANGELES and CHICAGO, October 5, 2023 — Metropolis Technologies, Inc. ("Metropolis"), a technology company whose computer vision platform enables checkout-free payment experiences, and SP® Plus Corporation (Nasdaq: SP) ("SP+"), a best-in-class technology and operations management provider of mobility services for aviation, commercial, hospitality, and institutional clients throughout North America and Europe, today announced that they have entered into a definitive agreement under which Metropolis will acquire SP+ for $54.00 per share in cash. This represents a premium of approximately 52% to the SP+ closing stock price on October 4, 2023, and approximately 28% to its 52-week high for an aggregate enterprise value of approximately $1.5 billion.
>
> Metropolis develops and deploys leading-edge computer vision technology that creates a "drive in and drive out" payment experience for consumers while increasing transparency, capturing revenue and reducing costs for real estate owners. To date, Metropolis has focused on bringing this checkout-free technology to its managed parking facilities, enabling top-tier real estate owners in 40+ major U.S. metropolitan centers to capture revenue from more than five million

consumers who do not have to stop to pay. Metropolis was founded in 2017 and is led by Alex Israel, Travis Kell, Peter Fisher, and Courtney Fukuda.

SP+ is a best-in-class technology and operations management provider, with a long track record of bringing together innovative solutions with superior service. SP+ has over 20,000 team members who manage approximately two million parking spaces and provide services at over 3,300 commercial locations and over 160 airports. Through its Sphere Commerce technology solutions, SP+ offers clients a compelling value proposition and the ability to implement technology upgrades that enable frictionless transactions.

Metropolis and SP+ share a vision of enhancing the consumer experience utilizing technology while improving efficiencies. With the acquisition of SP+, Metropolis will be able to bring new capabilities to North America's leading network with operations in over 360 cities, serving millions of consumers and processing over $4 billion in payments annually. This expanded market for checkout-free payment experiences offers new opportunities for property owners and managers to capture value and reduce inefficiencies.

"Today we announced a transformational acquisition that represents both a new paradigm in how technology companies grow and a significant step forward in offering consumers a remarkable experience," said Alex Israel, Co-founder and Chief Executive Officer of Metropolis. "SP+ is a phenomenal business whose operational excellence, talented leadership team and high customer satisfaction levels have long made it a key partner to real estate owners across North America. The combined platform will seek to bring checkout-free payment experiences to consumers."

Israel continued, "While transforming the parking experience is our focus and priority today, as we deploy our proven technology we see opportunity to offer checkout-free transaction experiences at even more places people go. From gas and electric vehicle-charging stations to drive-thrus and car washes, as well as retail stores, our computer vision platform enables people to transact in the physical world with even greater ease than we experience online. We're excited about the future with our new colleagues from SP+."

"This transaction delivers immediate and certain value to our stockholders at a substantial premium to current and historical trading levels. We expect the transaction to offer an exciting path forward for our team members, partners, clients and consumers in the U.S. and abroad. While our technology offerings are successfully fulfilling client and market demand, with increased investment, we see the opportunity to accelerate the technology roadmap for the benefit of our clients and their customers," said Marc Baumann, Chairman and Chief Executive Officer of SP+. "Combining with Metropolis will advance the pace of technology deployment, which will allow us to do more for existing clients and add new ones

as we provide additional high-quality, cutting-edge client and consumer experiences."

"Metropolis has built a thoughtful and differentiated platform that provides consumers with an efficient, frictionless experience," said Tony Minella, Co-founder and President of Eldridge, an existing Metropolis investor that is leading the financing of the transaction. "We are excited to deepen our partnership with Alex and the rest of the Metropolis team and to support their efforts to accelerate the company's vision, and are proud to work with a tremendous group of investors that will support the company's growth."

**Transaction Details**

Metropolis has obtained commitments for equity and debt financing totaling $1.7 billion to complete the transaction, consisting of $1.05 billion in Series C preferred stock financing and $650 million of debt financing. These financing commitments are led by Eldridge and existing Metropolis investor 3L Capital, along with new investors including BDT & MSD Partners' affiliated credit funds, Vista Credit Partners, and Temasek. Other existing investors, Slow Ventures and Assembly Ventures, participated. Metropolis will use the net proceeds to finance the acquisition of SP+, while retaining significant capital on its balance sheet.

The transaction is expected to close in 2024, subject to receipt of required regulatory approvals and approval of SP+'s stockholders, as well as other customary closing conditions. The boards of directors of both companies have unanimously approved the transaction, and the board of directors of SP+ recommends that SP+ stockholders vote in favor of the transaction. Upon completion of the transaction, shares of SP+ common stock will no longer trade publicly. Metropolis will continue to be founder-led and founder-controlled as a private company, with participation by other equity investors.

Goldman Sachs & Co. LLC and BDT & MSD Partners, LLC are serving as financial advisors to Metropolis. Goldman Sachs & Co. LLC acted as placement agent on the Series C transaction, and Maranon Capital L.P. (an Eldridge affiliate) and Goldman Sachs & Co. LLC acted as joint lead arrangers on the debt financing. Willkie Farr & Gallagher LLP and Fenwick & West LLP are serving as legal advisors to Metropolis. Morgan Stanley & Co. LLC. is serving as financial advisor to SP+, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to SP+. Sidley Austin LLP is serving as legal advisor to Eldridge.

**The Materially Incomplete and Misleading Proxy Statement**

20.     On January 10, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that SP Plus

stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; (iii) potential conflicts of interest faced by Morgan Stanley and Company insiders; and (iv) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning SP Plus's Financial Projections*

21. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

22. For example, with respect to the Company's "SP+ Projections," the Proxy Statement fails to disclose the line items underlying the calculation of: (i) Adj. Gross Profit; (ii) Adj. EBITDA; (iii) Free Cash Flow; and (iv) Unlevered Free Cash Flow.

23. In addition, according to the Proxy Statement, at an August 10, 2023, Board meeting, "[r]epresentatives from Morgan Stanley reviewed with the Board the SP+ Projections, noting certain changes from the summary of management's projections shared with Morgan Stanley as of May 17, 2023." Proxy Statement at 46. Yet, the Proxy Statement fails to disclose a summary of SP Plus management's projections shared with Morgan Stanley on May 17, 2023, or a summary of the changes made to arrive at the updated SP+ Projections used in connection with the August 10, 2023, Board meeting.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's Financial Analyses*

24. The Proxy Statement fails to disclose material information concerning Morgan Stanley's financial analyses.

25. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rate range of 8.8% to 9.4%; (iii) net debt; and (iv) the Company's fully diluted outstanding shares.

26. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose a quantification of the inputs and assumptions underlying the discount rate of 11.1%.

27. With respect to Morgan Stanley's *Publicly Traded Comparable Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies analyzed by Morgan Stanley.

28. With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected transactions analyzed by Morgan Stanley.

29. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement fails to disclose material information concerning Morgan Stanley's potential conflicts of interest.

31. For example, according to the Proxy Statement, "[a]s compensation for Morgan Stanley's financial advisory services, SP+ has agreed to pay Morgan Stanley a fee, a substantial portion of which is contingent upon the closing of the Merger, which is estimated, as of the date of this Proxy Statement, to be approximately $26 million (the 'Morgan Stanley Transaction Fee')."

Proxy Statement at 64.  The Proxy Statement fails, however, to disclose a quantification of the portion of the Morgan Stanley Transaction Fee that is contingent upon the closing of the Proposed Transaction.

32. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

33. Specifically, the Proxy Statement fails to disclose whether any of Metropolis' proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.  The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between SP Plus directors and officers and Metropolis.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

34. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

35. According to the Proxy Statement, the Company entered into a non-disclosure agreement with a company referred to in the Proxy Statement as "Party B" on May 11, 2023.  Yet, the Proxy Statement fails to disclose the details of the non-disclosure agreement, including whether it includes a "don't ask, don't waive" standstill provision and, if so, whether it remains in effect and is currently precluding Party B from submitting a topping bid for the Company.

36. In sum, the omission of the above-referenced information renders statements in the "Projections Prepared by SP+'s Management," "Opinion of SP+'s Financial Advisor," "Background of the Merger," and "Interests of the Directors and Executive officers of SP+ in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention

9

of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of SP Plus will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SP Plus**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. SP Plus is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of SP Plus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SP Plus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SP Plus, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 17, 2024

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

13